UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RAMON MURILLO,** )<br><br>Plaintiff, )<br><br>v. )<br><br>**TAYLOR, et al.,** )<br><br>Defendant. )<br>———————————————— ) | Civil No. 14-CV-00876-WQH (WVG)<br><br>**REPORT AND RECOMMENDATION GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE**<br><br>**[DOC. NO. 13]** |

## I.    INTRODUCTION

On April 11, 2014, Plaintiff Ramon Murillo ("Plaintiff"), a prisoner of the State of California proceeding *pro se* and *in forma pauperis*, filed a Civil Rights Complaint ("Present Complaint") pursuant to 42 U.S.C. § 1983.[1]  On August 14, 2014, Defendants T. Taylor ("Taylor"), Rucker ("Rucker"), Owens, E. Solis ("Solis"), J. Cedano ("Cedano"), J. Elias ("Elias"), R. Davis ("Davis"), R. Cobb ("Cobb"), Ives ("Ives"), and M. Jannush ("Jannush") (collectively, "Defendants") filed a Motion to Dismiss the Complaint as Duplicative of an Existing Action ("MTD").  (Doc. No. 13.)  On November 14, 2014, Plaintiff responded with an Opposition to Defendants' Motion to Dismiss the Complaint ("Opposition").  (Doc. No. 30.)  As of January 16, 2015, Defendants have not filed any supporting reply.  Accordingly,

---

[1] In this Report and Recommendation, any reference to "Section 1983" is to this section of title forty-two of the United States Code.

1   whether dismissal should be ordered based on the arguments of Plaintiff and Defendants
2   (collectively, "Parties"), as encapsulated and articulated in the MTD and the Opposition, is
3   the sole subject of this Report and Recommendation.

4       Essentially, the Parties dispute the extent to which this action ("Present Action") is an
5   impermissible mirror image of an action previously commended by a prior complaint ("First
6   Complaint") and presently on appeal before the United States Court of Appeals for the Ninth
7   Circuit ("Ninth Circuit") ("First Action").[2] Defendants, obviously, contend as much. (Doc.
8   No. 13-1 at 2.)  In their own words, "two lawsuits now exist with the same claims, against
9   the same Defendants, seeking the same relief," and because "[n]o party has a right to pursue
10  duplicate actions in the same court at the same time," the present action must be dismissed
11  under this Court's "inherent power to control its own docket."  (Id.)  Conceding that all
12  Defendants, with one exception, were named in his pending lawsuit, Plaintiff relies on a
13  single argument: because the decision on appeal is this Court's order granting the
14  Defendants' motion to dismiss without prejudice based on the Plaintiff's failure to exhaust
15  his administrative remedies, he is "entitled to refile all exhausted claims." (Doc. No. 30 at
16  2.)  With the Present Action purportedly involving only "exhausted claims" and the First
17  Action implicating only unexhausted claims, the two actions are not duplicative.  (Id.)
18  Rather, they are and must be construed as legally distinguishable matters.

19      While this Court is compelled to liberally construe the complaint of a *pro se* litigant
20  such as Plaintiff, it is equally bound to adhere to the standards established by 28 U.S.C. §§
21  1915(e) and 1915A.[3]  In accordance with that statutory mandate, a complaint must be
22  deemed "frivolous" or "malicious" and thus dismissed if it shares "a common nucleus of
23  operative fact" and similarly interested defendants. Under binding precedent, moreover,
24  perfect concordance in formal causes asserted and defendants named is viewed as

---

26  [2]  The First Action is docket number 12-CV-2642-WQH-WVG.   In this Report and
27  Recommendation, rather than repeating this number, the term "First Action" shall be used to distinguish
    cites to filings in this still pending proceeding from the Present Action.

28  [3]  In this Report and Recommendation, any reference to "Section 1915(e)" and "Section1915A" is
    to these sections of the U.S. Code's twenty-eighth title unless otherwise noted.

14-CV-00876-WQH (WVG)

unnecessary.  Because it finds that the present complaint does so, as explained more fully below, after having reviewed the Present Complaint, MTD, and Opposition, this Court hereby RECOMMENDS that Defendants' MTD be GRANTED with prejudice.

## II.   PROCEDURAL HISTORY: FIRST AND PRESENT ACTIONS

On October 31, 2012, Plaintiff commenced the First Action by filing the First Complaint pursuant to Section 1983.[4/]  (Doc. No. 1, First Action.)  On January 29, 2013, the Honorable William Q. Hayes of the United States District Court for the Southern District of California ("District Court") granted Plaintiff's Motion to Proceed *in forma pauperis* and directed the United States Marshal's Service to effect service of the Complaint on the named Defendants.  (Doc No. 7, First Action.)  On May 30, 2013, Defendants filed a Motion to Dismiss and for Severance of Parties and Claims.  (Doc. No. 36, First Action.)  The Court denied Defendants' MTD, sua sponte dismissed some of the claims and Defendants, and issued an Order to Show Cause ("OSC") for failure to prosecute.  (Doc. No. 47, First Action.)   Three defendants–the Dental Department of the California Department of Corrections and Rehabilitation ("CDCR"), Davis, and Pickett–were dismissed from the First Action.  (Doc. No. 47 at 10, First Action.)  Plaintiff later filed a non-opposition to the Court's OSC; therefore, the Court dismissed Defendant Hamilton from the First Action. (Doc. No. 55, First Action.)

On November 22, 2013, Defendants Elias, Cedano, Cobb, Davis, Foston, Goff, Hernandez, Ives, Owens, Paramo, Romero, Rucker, Solis, Strayhorn, and Taylor filed a Motion to Dismiss Plaintiff's Compliant pursuant to Federal Rule of Civil Procedure 12(b)[5/] for failure to exhaust administrative remedies.  (Doc. Nos. 61, 64, First Action.)  The Court provided Plaintiff with notice of all Defendants' motions pursuant to Wyatt v. Terhune, 315 F.3d 1108 (9th Cir. 2003), and set a briefing schedule.  (Doc. Nos. 62, 66, First Action.)

---

[4/] For purposes of this Report and Recommendation, this Court takes judicial notice of the documents filed in both cases' dockets. See, e.g., FED. R. EVID. 201; Porter v. Ollison, 620 F.3d 952, 955 n.1 (9th Cir. 2010); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980) (citations omitted).

[5/] Throughout this Report and Recommendation, any reference to "Rule" is to a Federal Rule of Civil Procedure unless otherwise noted.

1    Plaintiff filed an Opposition to both Motions.  (Doc. Nos. 69, 78, First Action.)  Defendant
2    Reid filed a Reply to Plaintiff's Opposition on February 20, 2014, while the remaining
3    Defendants filed a Reply to Plaintiff's Opposition on January 31, 2014.  (Doc. Nos. 81, 86,
4    First Action.)  In essence, in the First Action's motions to dismiss, Defendants argued that
5    while Plaintiff did file administrative grievances related to some of the claims raised in his
6    First Action, several of those grievances were untimely.  (Doc. No. 61-1 at 2, First Action.)
7    Defendant Reid argued that Plaintiff failed to file any administrative grievance relating to
8    the claims against her as alleged in the First Action.  (Doc. No. 64-1 at 5, First Action.)

9    On February 26, 2014, the District Court issued an Order Granting Defendants'
10   Motion to Dismiss Plaintiff's Complaint without prejudice for failure to exhaust his
11   administrative remedies.  (Doc. No. 89 at 15, First Action.)  On March 14, 2014, Plaintiff
12   filed a notice of appeal of the District Court's ruling before the Ninth Circuit.  (Doc. No. 91,
13   First Action.)  On April 11, 2014, Plaintiff filed the Present Action in the District Court.
14   (Doc. No. 1.)  As of January 21, 2015, Plaintiff's appeal in the First Action remains pending
15   before the Ninth Circuit.

16   **III.   FACTUAL ALLEGATIONS: FIRST AND PRESENT ACTIONS**

17   In 2011, Plaintiff was housed at the Richard J. Donovan Correctional Facility ("RJD").
18   (First Complaint at 9; Present Complaint at 6.)  On December 31, 2011, Plaintiff claims that
19   he was slammed on the ground by Defendant Rucker, with assistance by Defendant Owens,
20   and dragged across the dayroom floor.  (First Complaint at 9; Present Complaint at 6.)  After
21   he was forced into a cell, Plaintiff contends, Defendant Rucker started beating Plaintiff by
22   punching and kicking Plaintiff in the face while Defendant Owens kept watch for Defendant
23   Rucker.  (First Complaint at 9; Present Complaint at 6.)  Plaintiff alleges that Defendant
24   Owens encouraged Defendant Rucker's behavior and began to participate by also kicking
25   Plaintiff.  (First Complaint at 9; Present Complaint at 7.)  Plaintiff alleges that Defendants
26   Rucker and Owens threatened Plaintiff not to report the incident or he would regret it.  (First
27   Complaint at 9; Present Complaint at 7.)  Plaintiff alleges that Defendants Rucker and Owens
28   used excessive force against him as a form of retaliation for Plaintiff filing staff complaints

against other officers within RJD. (Present Complaint at 6.) Defendant Rucker then allegedly failed to provide Plaintiff with medical treatment. (First Complaint at 12; Present Complaint at 6.)

Plaintiff's next set of allegations relate to events that purportedly transpired during his time in the RJD "crisis bed." After reporting the beating by Defendants Rucker and Owens that allegedly occurred on December 31, 2011, Plaintiff maintains, he was housed in the RJD "crisis bed." (Present Complaint at 9.) On January 9, 2012, while still housed in the "crisis bed," Plaintiff claims that Defendant Cedano verbally assaulted him. (First Complaint at 13; Present Complaint at 9.) Plaintiff insists Defendant Cedano entered his cell door and pushed Plaintiff violently, which caused Plaintiff to fall to the floor and hit his head on the concrete wall. (First Complaint at 13; Present Complaint at 9.) Plaintiff contends that Defendant Cedano jumped on Plaintiff, choked him, and covered up the use of force by claiming that he pinned Plaintiff down to give him a hormone shot. (First Complaint at 13; Present Complaint at 9.) Plaintiff avers that the actions by Defendant Cedano were in retaliation for Plaintiff reporting the incident with Defendant Rucker. (First Complaint at 13; Present Complaint at 9.)

Plaintiff alleges that his attempts to file complaints and grievances relating to these actions were thwarted by the actions of Defendant Cobb. (First Complaint at 13; Present Complaint at 13.) As a result, he was subjected to more harm, retaliation, sexual harassment, and beatings. (First Complaint at 13; Present Complaint at 13.) Plaintiff further insists that Defendant Cobb had a duty to process staff complaints, especially dealing with claims of sexual harassment and excessive force, but he breached that duty. (First Complaint at 13; Present Complaint at 15.) Plaintiff adds that Defendants Taylor and Solis retaliated against him by denying his medical appliances and property. (First Complaint at 15; Present Complaint at 15.)

On April 7, 2012, Plaintiff claims that Defendants Elias, Ives, and Davis called Plaintiff, a transgender inmate, "a man with tits" and a "queer." (First Complaint at 16; Present Complaint at 10-12.) Plaintiff claims that Defendants Elias and Davis then went to

search Plaintiff's cell and confiscate his property, including his legal work. (First Complaint at 16-17; Present Complaint at 10, 12.) Plaintiff claims that Defendant Davis read a personal letter belonging to Plaintiff to other inmates. (First Complaint at 17; Present Complaint at 12.) Plaintiff alleges that this was done in retaliation for Plaintiff assisting other inmates in filing grievances against Defendants Ives, Davis, and Elias. (First Complaint at 17; Present Complaint at 12.)

## IV.   **PLAINTIFF'S CLAIMS**

Defendants contend that every claim in Plaintiff's Present Action, except for Claim Ten against Jannusch, duplicates claims that he brought in the First Action, which is still ongoing. (Doc. No. 13-1 at 3.) Before the Court can properly analyze the Present Action's kinship with Plaintiff's first suit, a precis of Plaintiff's claims in both the First and Present Complaints is necessary. Below, this Court offers such a summary, highlighting Plaintiff's clearly duplicative claims and the one ostensibly novel one.

### A.   **Duplicative Claims**

#### 1.   *Claim One*

Claims One and Four in this action, where Plaintiff accuses Defendants Taylor and Solis of retaliating against him and improperly withholding property from him while he was held in administrative segregation at RJD, **duplicates Claim Four** from the First Action. (<u>Compare</u> First Complaint at 15, 42-44, <u>with</u> Present Complaint at 5, 8.)

#### 2.   *Claim Two*

Claims Two and Three in this action, where Plaintiff accuses Defendants Rucker and Owens of using excessive force against him at RJD on December 31, 2011, **duplicates Claim One** from the First Action. (<u>Compare</u> First Complaint at 11-12, 27-29, <u>with</u> Present Complaint at 6-7.)

#### 3.   *Claim Three*

Claims Two and Three in this action, where Plaintiff accuses Defendants Rucker and Owens of using excessive force against him at RJD on December 31, 2011, **duplicates**

14-CV-00876-WQH (WVG)

**Claim One** from the First Action. (<u>Compare</u> First Complaint at 11-12, 27-29, <u>with</u> Present Complaint at 6-7.)

**4.** *Claim Four*

Claims One and Four in this action, where Plaintiff accuses Defendants Taylor and Solis of retaliating against him and improperly withholding property from him while he was held in administrative segregation at RJD, **duplicates Claim Four** from the First Action. (<u>Compare</u> First Complaint at 15, 42-44, <u>with</u> Present Complaint at 5, 8.)

**5.** *Claim Five*

Claim Five in this action, where Plaintiff accuses Defendant Cedano of using excessive force against him at RJD on January 9, 2012, **duplicates Claim Two** from the First Action. (<u>Compare</u> First Complaint at 13, 29-31, <u>with</u> Present Complaint at 9.)

**6.** *Claims Six, Seven, and Eight*

Claims Six, Seven, and Eight in this action, where Plaintiff accuses Defendants Elias, Davis, and Ives of retaliating against him at RJD on April 7, 2012, calling him names, and sexually harassing him, **duplicates Claims Seven and Eight** from the First Action. (<u>Compare</u> First Complaint at 16-17, 45-47, <u>with</u> Present Complaint at 10-12.)

**7.** *Claim Nine*

Claim Nine in this action, where Plaintiff accuses former appeals coordinator, Defendant Cobb, of retaliating against him and failing to process his administrative grievances properly, duplicates **Claims Three, Fourteen, and Fifteen** from the First Action. (<u>Compare</u> First Complaint at 14, 21-22, 31-33, 51-52, <u>with</u> Present Complaint at 13.)

**10.** *Claim Eleven*

Claims Eleven, Twelve, and Thirteen in this action, where Plaintiff asserts causes of action under state law for negligence and intentional infliction of emotional distress against Defendants Rucker, Owens, Cedano, Taylor, Solis, and Cobb, based on his allegations of excessive force and retaliation against them, are based on the same allegations in **Claims One, Two, Three, and Four** from the First Action. (<u>Compare</u> First Complaint at 28-31, 42-44, <u>with</u> Present Complaint at 15-16.)

14-CV-00876-WQH (WVG)

### 11.   *Claim Twelve*

Claims Eleven, Twelve, and Thirteen in this action, where Plaintiff asserts causes of action under state law for negligence and intentional infliction of emotional distress against Defendants Rucker, Owens, Cedano, Taylor, Solis, and Cobb, based on his allegations of excessive force and retaliation against them, are based on the same allegations in **Claims One, Two, Three, and Four** from the First Action. (Compare First Complaint at 28-31, 42-44, with Present Complaint at 15-16.)

### 12.   *Claim Thirteen*

Claims Eleven, Twelve, and Thirteen in this action, where Plaintiff asserts causes of action under state law for negligence and intentional infliction of emotional distress against Defendants Rucker, Owens, Cedano, Taylor, Solis, and Cobb, based on his allegations of excessive force and retaliation against them, are based on the same allegations in **Claims One, Two, Three, and Four** from the First Action. (Compare First Complaint at 28-31, 42-44, with Present Action at 15-16.)

### B.   New Claim(s)

### 1.   *Claim Ten*

In his Present Action, Plaintiff claims that Defendant Jannush retaliated against and sexually harassed Plaintiff and placed his life in danger. (Present Complaint at 14.) Plaintiff asserts that Jannush was retaliating against him because of Plaintiff's staff complaints and "safety placement in Ad Seg against Defendants Rucker, Owens, Cedano." (Id.) Plaintiff further claims that Jannush called Plaintiff a "snitch" and a "child molester" in front of inmates. (Id.) In his First Action, Plaintiff did not assert any claims against Defendant Jannush or list the latter as one of the nine original defendants.

## V.   APPLICABLE LAW

### A.   Rule 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. FED. R. CIV. P. 12(b)(6). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief"

in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." FED. R. CIV. P. 8(a)(2); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80, 85 (1957)); Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). Dismissal of a claim is appropriate only where the complaint lacks a cognizable theory. Bell Atlantic, 550 U.S. at 553-65. The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff. N.L. Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). The court does not consider whether the plaintiff will "ultimately prevail." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984).

"If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim." Roth v. Garcia Marquez, 942 F.2d 617, 625 n.1(1991) (quoting Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir.1987)). "[W]hen the allegations of the complaint are refuted by an attached document, the Court need not accept the allegations as being true." Roth, 942 F.2d at 625 n.1 (citing Ott v. Home Savings & Loan Ass'n, 265 F.2d 643, 646 n.1 (9th Cir.1958)). A court may also consider other documents beyond, but integral to, the complaint. Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008). With all this data in hand, while material facts are weighed in a light most favorable to plaintiff, the pleader's "mere conclusions" are not entitled to deference if decidedly undermined by such external, albeit integral or incorporated, sources. See Ott, 265 F.2d at 646 n.1.

"The focus of any Rule 12(b)(6) dismissal . . . is the complaint." Schneider v. California Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Thus, when

resolving a motion to dismiss for failure to state a claim, the court may not generally consider materials outside the pleadings.  Id.  This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6). Id. (citing Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993); 2 MOORE'S FEDERAL PRACTICE § 12.34[2] (Matthew Bender 3d ed.) ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).")).

**B.     Section 1915**

Pursuant to Section 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C. § 1983; Baker v. McCollan, 443 U.S. 137, 140, 99 S. Ct. 2689, 2692, 61 L. Ed. 2d 433 (1979) (citing Section 1983).  To state a cause of action under Section 1983, a person, including the Plaintiff here, must allege facts showing (1) a person, acting under color of state law (2) deprived the plaintiff (3) of a right, privilege or immunity secured by the Constitution or federal statutory law. See Anderson v . Warner, 451 F.3d 1063, 1067 (9th Cir. 2006) (construing (2) and (3) as one single factor) (citing West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254–55, 101 L. Ed. 2d 40 (1988)). A product of the Reconstruction era, Kenyatta v. Moore, 623 F. Supp. 224, 227 (S.D. Miss. 1985) (summarizing the legislative history), with its focus on "the misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law," Johnston v. Lucas, 786 F.2d 1254, 1257 (5th Cir. 1986) (internal quotation marks omitted) (citing Monroe v. Pape, 365 U.S. 167, 184, 81 S. Ct. 473, 482, 5 L. Ed. 2d 492 (1961)), "the very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights," Mitchum v. Foster, 407 U.S. 225, 242, 92 S. Ct. 2151, 2162, 32 L. Ed. 2d 705 (1972), cited in Haywood v. Drown, 556 U.S. 729, 735, 129 S. Ct. 2108, 2114, 173 L. Ed. 2d 920 (2009).

Of a more recent vintage, Robert S. Catz & Thad M. Guyer, <u>Federal In Forma Pauperis Litigation: In Search of Judicial Standards</u>, 31 RUTGERS L. REV. 655, 657 (1978), another statute governs a court's initial consideration of a complaint predicated on an alleged violation of Section 1983.[6] Section 1915 provides that a court "may authorize" a waiver of the fees and costs connected with inaugurating a suit upon the filing of an affidavit stating the petitioner's inability to pay costs, the nature of his or her action, and his or her belief that he or she is entitled to redress. 28 U.S.C. § 1915(a)(1); <u>In re Williamson</u>, 786 F.2d 1336, 1338 (8th Cir. 1986) (explicating the purposes behind Section 1915); Janet Laughlin Babcock, Note, <u>Petitions to Sue in Forma Pauperis in Federal Courts: Standards and Procedures for the Exercise of Judicial Discretion</u>, 56 B.U. L. Rev. 745, 746–47 (1976) (same). This same awards courts with a certain power, a critical safeguard, in such cases so as to prevent persons who are unable to pay costs and give security from being "allowed under the cover of the statute to abuse the process of the court." <u>Clark v. Zimmerman</u>, 394 F. Supp. 1166, 1177 (M.D. Pa. 1975); <u>see also, e.g.</u>, <u>Deutsch v. United States</u>, 67 F.3d 1080, 1084 (3d Cir. 1995) ("Congress was also concerned, however, that indigent persons could abuse this cost-free access to the federal courts."); <u>Nasim v. Warden, Md. House of Correction</u>, 64 F.3d 951, 953 (4th Cir. 1995) (noting Congress' concern with "prevent[ing] the abuse of litigation that free access to the courts might encourage"). Thus, even in a civil rights action like Plaintiff's own, whenever a prisoner proceeds *in forma pauperis*, a court may in its discretion dismiss his or her lawsuit if the action is "frivolous or malicious." 28 U.S.C. § 1915(e)(2)(B)(i); <u>Cato v. United States</u>, 70 F.3d 1103, 1106 (9th Cir. 1995) (citing earlier iteration of § 1915(e)); <u>accord</u> <u>Wiggins v. Donio</u>, 245 F. App'x 190, 192 (3d Cir. 2007) ("Because Wiggins is proceeding in forma pauperis, we must determine whether this appeal should be dismissed as frivolous pursuant to § 1915(e)(2)(B)(I)."). In fact, regardless

---

[6] In the MTD, Defendants rely in part on this Court's inherent authority to manage its docket. (Doc. No. 13-1 at 2.) While other courts have dismissed duplicative complaints on this basis, <u>see, e.g.</u>, <u>Johnson v. Hay County</u>, No. A-14-CA-834 LY, 2014 U.S. Dist. LEXIS 154665, at *11-12, 2014 WL 5524144, at *5 (W.D. Tex. Oct. 31, 2014), a statutory basis, as can be found for dismissal of a Section 1983 complaint, is always preferable. Despite this failing, Defendants do accurately discuss the case law regarding duplicative actions, most especially <u>Adams v. California Department of Health Services</u>, 487 F.3d 684, 692 (9th Cir. 2007). (Doc. No. 13-1 at 3.)

of whether a prisoner has sought *in forma pauperis* status under Section 1915, a court must "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and "dismiss the complaint . . . if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(a), (b)(1); Hudson v. Clark, 319 F. Supp. 2d 347, 350 (W.D.N.Y. 2004) (citing §§ 1915(e) and 1915A(a)).

Although neither the text of Section 1915 nor its legislative history suggests a definite definition for "frivolous," Stephen M. Feldman, Indigents in the Federal Courts: The In Forma Pauperis Statute–Equality and Frivolity, 54 FORDHAM L. REV. 413, 415 (1985), or "malicious,"[7] Babcock, Petitions to Sue, 56 B.U. L. Rev. at 749, courts have repeatedly held that a Section 1983 action was "malicious" and thus subject to dismissal under Section 1915(e) when a pauper files a "lawsuit that duplicates allegations of another pending federal lawsuit by the same plaintiff," Pittman v. Moore, 980 F.2d 994, 994–95 (5th Cir. 1993); accord, e.g., McWilliams v. Colorado, 121 F.3d 573, 575 (10th Cir. 1997) (agreeing with a district court that dismissed a duplicative complaint as frivolous under § 1915); Meadows v. Woods, 156 F.R.D. 165, 166 (W.D Tenn. 1994) (dismissing a complaint due to the inclusion of "contentions [that] are essentially duplicative of the ones considered and rejected in the five companion cases filed with this pleading"); Mayfield v. Collins, 918 F.2d 560, 561–62 (5th Cir. 1990) (refusing to countenance the prosecution of "non-frivolous claims" that were "duplicative of previously litigated issues"); Wilson v. Lynaugh, 878 F.2d 846, 847 (5th Cir. 1989) (affirming a dismissal of a "duplicative" complaint, one "reasserting allegations litigated in a prior suit"). In fact, as the Ninth Circuit has announced with clarion clarity, there can be no abuse of discretion when a court dismisses under Section 1915(e) a complaint that "merely repeats pending or previously litigated claims," Cato, 70 F.3d at 1105

---

[7] Courts do not always distinguish between whether a particular complaint is "frivolous" or "malicious," as both terms have broad connotations that can lead to intermingling in practical effect. Still, as a general matter, "a complaint plainly abusive of the judicial process," i.e. a duplicative one, can be "properly typed malicious." Crisafi v. Holland, 655 F.2d 1305, 1309 (D.C. Cir. 1981).

14-CV-00876-WQH (WVG)

1  n.2, and portrayed dismissal of such lawsuits as "promot[ing] judicial economy and

2  comprehensive disposition of ligation," <u>Adams v. Cal. Dep't of Health Servs.</u>, 487 F.3d 684,

3  692 (9th Cir. 2007) (internal quotation marks omitted).  In undertaking this exposition,

4  "courts generally look to the identity of the parties, legal claims, factual allegations including

5  temporal circumstances, and the relief sought," <u>Hahn v. Tarnow</u>, No. 06-CV-12814, 2006

6  U.S. Dist. LEXIS 52383, at *11, 2006 WL 2160934, at *3 (E.D. Mich. July 31, 2006), and

7  a handful of courts have seemingly required a perfect symmetry of causes and defendants,

8  <u>see</u> <u>Walton v. Eaton Corp.</u>, 563 F.2d 66, 70 (3d Cir. 1977).  But the majority has found

9  sufficient duplication when the new complaint arises from the same series of events and

10  alleges many of the same facts as an earlier suit.  <u>Johnson v. Dear</u>, No. 3:13-CV-1496, 2013

11  U.S. Dist. LEXIS 123252, at *3–4, 2013 WL 4596845, at *2 (W.D. La. Aug. 7, 2013)[8]

12  (collecting cases); <u>see also</u> <u>Bailey v. Johnson</u>, 846 F.2d 1019, 1021 (5th Cir. 1988) ("[W]e

13  have dismissed an appeal as frivolous because it involved a duplicative action arising from

14  the same series of events and alleging many of the same facts as an earlier suit . . . ."

15  (collecting cases)).  In the views of this persistent majority, the statute encodes no absolute

16  requirement for an unvarying list of defendants; none is implicit in the expansive grant of

17  discretion afforded by Section 1915(e). "*[V]irtually* identical causes of action" will alone

18  suffice. <u>McWilliams</u>, 121 F.3d at 574 (emphasis added) (quoting <u>Bailey</u>, 846 F.2d at 1021).

19  Thus, even if new defendants are added, "repeating the same factual allegations asserted in

20  an earlier [or pending] case" subjects a complaint "to dismissal as duplicative" under Section

21  1915(e), <u>Kenaz Dumah Parker v. Yates</u>, No. 12-CV-00717-GBC (PC), 2012 U.S. Dist.

22  LEXIS 127692, at *2, 2012 WL 3912958, at *1 (E.D. Cal. Sept. 7, 2012); <u>accord, e.g.</u>,

23  <u>Houston v. Caruso</u>, No. 2:08-CV-124, 2009 U.S. Dist. LEXIS 17062, at *2, 2009 WL

24  579411, at *1 (W.D. Mich. Mar. 5, 2009) ("Where the factual allegations are the same and

25  the actions of the newly named defendants merely formed a partial basis for the previous

26  suit, the suit against the new defendants may be found to be duplicative"), so long as the new

27

28      [8] The Westlaw and Lexis cites to this unpublished opinion employ different dates.  Lexis opts for
August 7, 2013, and Westlaw for August 28, 2013.

1  defendants embody and reflect the same substantive interests, see, e.g., Adams, 487 F.3d at

2  689, and so long as substance of the complaint, most particularly the legal wrong depicted,

3  is identical, Hahn, 2006 U.S. Dist. LEXIS 52383, at *12, 2006 WL 2160934, at *4.

4      As such, a Section 1983 complaint may always be dismissed whenever a plaintiff

5  seeks to "relitigate claims alleging substantially the same facts arising from a common series

6  of events." Hakim v. Levinson, Civil No. 09-5533 (RMB), 2010 U.S. Dist. LEXIS 40437,

7  at *1 n.1, 2010 WL 1705773, at *1 n.1 (D.N.J. Apr. 26, 2010).  Most relevant here, dismissal

8  is appropriate when the relevant complaint advances "claims arising out of a common

9  nucleus of operative facts that could have been brought in the prior litigation." McGill v.

10 Juanita Kraft Postal Serv., No. 3:03-CV-1113-K, 2003 U.S. Dist. LEXIS 9636, at *4, 2003

11 WL 21355439, at *2 (N.D. Tex. June 6, 2003) (citing Pittman, 980 F.2d at 994–95). As

12 multiple courts have observed, in exercising its discretion under Section 1915, a court may

13 properly consider court records. Daye v. Bounds, 509 F.2d 66, 68 (4th Cir. 1975); accord,

14 e.g., Scott v. Thorton, 703 F.2d 566, 566 (8th Cir. 1982). In accordance with the majority

15 approach, then, whatever new constellation of defendants appears in a new complaint, the

16 actions constituting the underlying deprivation must be distinct and the new interests

17 adduced distinguishable for duplication not to be found and a complaint to survive

18 discretionary review under Section 1915.  Adams, 487 F.3d at 689 (concluding that "[t]o

19 ascertain whether successive causes of action are the same, we use the transaction test,"

20 concluding that "[h]ere, it is clear the two actions share a common transactional nucleus of

21 facts," and holding that new defendants whose "interests . . . aligned" with a prior one and

22 who maintained "a close relationship with" the previously sued employer were sufficiently

23 related for purposes of Section 1915(e)); see also Serlin v. Arthur Andersen & Co., 3 F.3d

24 221, 223 (7th Cir. 1993) ("[A] suit is duplicative if the claims, parties, and available relief

25 do not significantly differ between the two actions." (internal quotation marks omitted)

26 (citing Ridge Gold Standard Liquors v. Joseph E. Seagram, 572 F. Supp. 1210, 1213 (N.D.

27 Ill. 1983))).

28

# VI.   **DISCUSSION**

In accordance with the foregoing cases, to ascertain whether the Present Action is sufficiently duplicative of the First Complaint, this Court must make a two-part determination.  See, e.g., Risinger v. SOC LLC, 936 F. Supp. 2d 1235, 1245 (D. Nev. 2013) (noting that "two suits are duplicative where 'the causes of action and relief sought, as well as the parties or privies to the action, are the same' (citing Adams, 487 F.3d at 689)); Goggia v. Fed. Nat'l Mortg. Ass'n, No. Civ. S-12-3091 LKK/KJN, 2013 U.S. Dist. LEXIS 44202, at *14, 2013 WL 1279179, at *5 (E.D. Cal. Mar. 27, 2013).  First, it must ascertain to what extent, if any, the First and Present Actions arise from the same concatenation of critical facts.  See Laube v. FURminator, Inc., 765 F. Supp. 2d 1206, 1207 (C.D. Cal. 2012) (finding that two actions "share a common transactional nucleus of facts" as both claims sought the same relief and disputed ownership of the same patents).  Next, the Court weighs to what extent the parties are the same or in privity.  Adams, 487 F.3d at 689. If the same cause of action and the same interests typify the two actions, dismissal on the basis of an action's duplication is merited, whether the reason be deemed a complaint's frivolity or its maliciousness, even though pro se filing are to be liberally construed. See Patel v. Prince, 276 F. App'x 531, 532 (8th Cir. 2008).

## A.   **Common Nucleus**

In Adams, the Ninth Circuit identified the four relevant criteria: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." Adams, 487 F.3d at 689 (quoting Costantini v. Trans World Airlines, 681 F.2d 1199, 1201–02 (9thg Cir. 1982)). A test adopted in the claim preclusion context, "[w]hether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." W. Sys. Inc. v. Ulloa, 958 F.2d 864, 871 (9thg Cir. 1992) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 24(1) (1982)).  That different

evidence may be presented in the second action does not by itself foreclose a finding of a shared factual core. Int'l Union of Operating Eng'rs-Emp'rs Constr. Indus. Pension v. Karr, 994 F.2d 1426, 1430 (9th Cir. 1993).   A finding of every potential element listed in Costantini is hence not required so long as "two claims arose out of the same transaction." Id.; accord, e.g., Frank v. United Airlines, Inc., 216 F.3d 845, 851 (9th Cir. 2000) (citing Costantini, 681 F.2d at 1201–02); C.D. Anderson & Co., Inc. v. Lemos, 832 F.2d 1097, 1100 (9th Cir. 1987) (placing within a common nucleus any and all allegations that arose from a singular act of securities trading). In making this determination, a court must be mindful of an old admonition: "[an] [a]ppellant is not permitted . . . to litigate piecemeal the issues which could have been resolved in one action." Flynn v. State Bd. of Chiropractic Examiners, 418 F.2d 668, 668 (9th Cir. 1969) (*per curiam*); see also Scoggin v. Schrunk, 522 F.2d 436, 437 (9th Cir. 1975) (noting that this rule "is made to apply to federal claims under 42 U.S.C. § 1983").

Here, it is clear the First and Present Actions share such a common transactional nucleus. The same purported misdeeds–retaliation during Plaintiff's time at RJD; use of excessive force on December 31, 2011; a subsequent utilization of too much force on January 9, 2012; one more round of retaliation perpetrated while Plaintiff was at the RJD on April 7, 2012; more retaliation and a related failure to properly file Plaintiff's grievance; and the causes of action for negligence and intentional infliction of emotional distress, specifically based on the previous allegations of retaliation  and excessive force–underlie both actions. (Compare Present Complaint at 1–17, with First Complaint at 1–7.) Additionally, it is certain that the Ninth Circuit's decision regarding this Court's dismissal of the First Complaint will affect the extent to which Defendants will be liable–and Plaintiff's rights have been violated, and his request for redress timely made–for the very same actions that form the essential bedrock of the Present Action. If the Ninth Circuit determines Plaintiff's First Complaint is time-barred, nearly every general action, from Defendants' allegedly retaliatory acts to their use of excessive force to the emotional toll attributable to this conduct, detailed in the Present Complaint will just as surely be rendered

unviable, and this action will need to be promptly dismissed. In other words, any "rights established by the judgment in the first action [by the Ninth Circuit] would be destroyed or impaired by a judgment in the present action," <u>Adams</u>, 487 F.3d at 691; conversely, a negative decision in the former will itself destroy any chance for judgment in the present matter. Furthermore, as the papers make plain, Plaintiff seeks the same relief in both complaints–an injunction; "nominal damages, pain & suffering, emotional pain, physical pain, court cost, cost incurred, attorney fees"; punitive damages in the amount of $800,000; and compensatory damages. (<u>Compare</u> Present Complaint at 18, <u>with</u> First Complaint at 7.) True, his request for damages has grown by $300,000, but the same type of relief, at nearly the same financial quantity, is sought. Still, a more crucially, as a brief perusal reveals, "the facts essential to the second suit were present in the [Plaintiff's] first suit." <u>McCoy v. Blossom</u>, No. 09-cv-2146, 2014 U.S. Dist. LEXIS 37605, at *14, 2014 WL 1120346, at *5 (W.D. La. Feb. 27, 2014).[9] With the same general relief sought and the same general transaction pled, this Court finds a sufficient factual commonality, the first prong set forth in <u>Adams</u> duplication test.

### B.   Same Parties and Privities

The term "privities" is broadly construed for purposes of assaying whether a second complaint has a duplicative set of defendants, <u>Adams</u> second factor.[10] So long as even the new parties "represent the same interests," a sufficient similarity exists. <u>The Haytian Republic</u>, 154 U.S. 118, 124, 14 S. Ct. 992, 993, 38 L. Ed. 930 (1894), <u>cited in</u> <u>Adams</u>, 497 F.3d at 689; <u>see also, e.g.</u>, <u>Katz v. Gerardi</u>, 655 F.3d 1212, 1217 (10th Cir. 2012) (discussing "the general principle regarding claim-spitting" still embodied by <u>The Haytian Republic</u>). Reflecting this second factor's close, even derivative, connection to the doctrine of virtual representation, a court looks for "adequate representation" and such features as "a close relationship, substantial participation, and tactical maneuvering." <u>Adams</u>, 487 F.3d at 691,

---

[9] The Westlaw citation uses a different date for the same case: March 20, 2014.

[10] This Court notes, but does not consider decisive, the fact that an inmate is required to list all staff members involved and describe their involvement in an issue when filing a complaint. Cal. Code.Regs. Tit. 15, § 3084.2(a)(3).

cited in, e.g., Thomas v. Almager, No. 1:07-cv-01132-OWW-TAG HC, 2008 U.S. Dist. LEXIS 63240, at *3, 2008 WL 2858361, at *1 (E.D. Cal. July 24, 2008) (quoting id.); Garza v. Warden, No. 1:07-cv-01067-LJO-TAG HC, 2008 U.S. Dist. LEXIS 4065, at *3, 2008 WL 203564, at *2 (E.D. Cal. Jan. 18, 20008) (same).

Here, though Jannush is named anew, this party has an interest concurrent with that of his colleagues and his employer, CDCR, all defendants against which Plaintiff moved in the First Action. Unsurprisingly, "[c]ourts have routinely found privity between co-employees sued in separate suits over allegedly tortious acts during the course of their employment." Watson v. Mayo, No. 07 Civ. 54 (NRB), 2008 U.S. Dist. LEXIS 18444, at *25–26, 2008 WL 538442, at *8 (S.D.N.Y. Feb. 26, 2008) (citing Adams, 487 F.3d at 691). Prison guards, the United States Court of Appeals for the Second Circuit notably held, are in privity with other prison guards in the context of a Section 1983 complaint by a prison inmate alleging similar acts by undeniably separate defendants who appear, based on the papers tendered, to have been co-participants. Barclay v. Lowe, 131 F. App'x 778, 779 (2d Cir. 2005). As another case explains, as a matter of custom and necessity, "[t]here is privity between officers of the same government so that a judgment in a suit between a party and a representative of the [government] is res judicata in relitigation of the same issue between that party and another officer of the government." Cruz Berrios v. Gonzalez-Rosario, 630 F.3d 7, 14 (1st Cir. 2000) (alteration in original) (citing Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 402–03, 60 S. Ct. 907, 917, 84 L. Ed. 1263 (1940) (internal quotation marks omitted)).

Rather obviously and certainly logically, these cases' reasoning applies to this proceeding. Quite surely, the interest of the Present Action's one new defendant were and are being "adequately represented by those in the first suit"; quite surely, the substance of this defendant's rejoinder has been and will be made by his or her employer, the very agency "vested with the authority of representation" by statutory command. Digennaro v. Whitehair, 467 F. App'x 42, 44 (2d Cir. 2012) (quoting Barclay, 131 F. App'x at 779 (internal quotation marks omitted)). Furthermore–and significantly–the same tactical choices made by

Defendants in the first suit will ultimately rebound to the benefit or the detriment of Jannush. If his colleagues are found exempt from liability, regardless of the basis he (or she) too will find himself (or herself) freed from further litigation implicating this same series of incidents. In short, a sufficient alignment between new and old herein appears, and an ineluctable privity of concern and advantage can be discerned from both the pleadings and the motions submitted in this proceeding. <u>McCarroll v. U.S. Fed. Bureau of Prisons</u>, No. 3:11-CV-934 (VLB), 2012 U.S. Dist. LEXIS 128394, at *25–27, 2012 WL 3940346, at *8 (D. Conn. Sept. 10, 2012) (collecting cases so concluding); <u>accord</u> <u>Clark v. Kitt</u>, No. 12-CV-8061 (CS), 2014 U.S. Dist. LEXIS 112494, at *35, 2014 WL 4054284, at *11 (S.D.N.Y. Aug. 15, 2014) (holding that a new defendant was in sufficient privity with "her employer and co-workers" so as to justify preclusion as well as citing to other cases in the same vein). Accordingly, based on this ever-accreting plethora of case law, this Court finds the second factor in <u>Adams</u> essential for deeming the Present Action duplicative of Plaintiff's first iteration has been shown by the bare record alone, with no more evidence needed for this conclusion to be drawn.

## C.    Section 1915's Known Purpose

Of course, upon a finding of duplication dismissal remains a discretionary matter. <u>Adams</u>, 487 F.3d at 692.  Though a statute's purpose may never override its plain meaning but in the most extreme of cases, known ends may inform and buttress the interpretation of undefined terms. <u>See, e.g.</u>, <u>United States v. DuBose</u>, 598 F.3d 726, 731 (11th Cir. 2010) ("[W]e are not required to interpret a statute 'in such a narrow fashion as to defeat what we conceive to be its obvious and dominating general purpose'." (quoting <u>Miller v. Amusement Enters., Inc.</u>, 395 F.2d 342, 350 (5th Cir. 1968))); <u>United States v. Kozeny</u>, 541 F.3d 166, 171 (2d Cir. 2008) ("Our obligation is to give effect to congressional purpose so long as the congressional language does not itself bar that result." (internal quotation marks omitted) (quoting <u>Johnson v. United States</u>, 529 U.S. 694, 710 n.10, 120 S. Ct. 1795, 1805 n.10, 146 L. Ed. 2d 727 (2000)); <u>United States v. Pacheco</u>, 225 F.3d 148, 154 (2d Cir. 2000) ("[T]he whole act rule of statutory construction exhorts us . . . to look to the provisions of the whole

law, and to its object and policy." (internal quotation marks omitted) (quoting <u>Richard v. United States</u>, 369 U.S. 1, 11, 82 S. Ct. 585, 591–92, 7 L. Ed. 2d 492 (1962)), *cert. denied*, 533 U.S. 904, 121 S. Ct. 2246, 150 L. Ed. 2d 234 (2001); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 167–69 (2012) (discussing the use and misuse of the whole text canon). In explaining the reasons for dismissals pursuant to Section 1915, the Ninth Circuit has expressly stressed the need to "promote judicial economy and comprehensive disposition of litigation." <u>Adams</u>, 487 F.3d at 692 (internal quotation marks omitted) (citing <u>Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.</u>, 342 U.S. 180, 183, 72 S. Ct. 219, 96 L. Ed. 200 (1952)). As the legislative record eloquently intones, Section 1915, designed "to open United States courts to a class of American citizens who have rights to be adjudicated, but are now excluded practically for want of sufficient money or property to enter the courts under their rules," will "not admit of vexatious litigation." H.R. REP. NO. 52-1079, at 1–2 (1892). While courts have divided over the precise meaning of "malicious" and "frivolous," a consensus has been forged regarding the necessity of dismissing duplicative complaints so as to minimize waste and minimize any potential for inconsistent adjudications, <u>see, e.g.</u>, <u>Walton v. Eaton Corp.</u>, 563 F.2d 66, 70 (3d Cir. 1977), <u>cited with approval in</u> <u>Russ v. Standard Ins. Co.</u>, 120 F.3d 988, 990 (9th Cir. 1997). In this case, due to the Present Action's kinship with the First Action, <u>see supra</u> 15—19, these known purposes further buttress this Court's choice to exercise its discretion to deem the Present Complaint duplicative.[11]

## VII.   RECOMMENDATION

For the aforementioned reasons, the Court RECOMMENDS the MTD be GRANTED with prejudice. This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. Section 636(b)(1).

---

[11] Of course, to the extent Plaintiff has distinct causes of action against the same or different defendants, no bar appears in these pages. Additionally, depending on the Ninth Circuit's eventual decision, Plaintiff may yet be able to prosecute the First Action and obtain the exact same redress he has sought in the present one.

**IT IS ORDERED** that no later than <u>**February 18, 2015**</u>, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than <u>**March 4, 2015**</u>.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991). IT IS SO ORDERED.

DATED:  January 21, 2015

Hon. William V. Gallo
U.S. Magistrate Judge