# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON MURILLO,<br><br>                Plaintiff,<br>vs.<br>TAYLOR, et. al.,<br><br>                Defendant. | CASE NO. 14cv876-WQH (WVG)<br><br>ORDER |

HAYES, Judge:

The matter before the Court is the review of the Report and Recommendation (ECF No. 32) issued by United States Magistrate Judge William V. Gallo, recommending that this Court grant Respondent's Motion to Dismiss with prejudice. *Id*. at 3, 20.

## I.  Background

On October 31, 2012, Plaintiff commenced an action in this Court, case no. 12-cv-2642 WQH (WVG), by filing a Complaint pursuant to Section 1983 against Defendants T. Taylor ("Taylor"), Rucker, Owens, E. Solis ("Solis"), J. Cedano ("Cedano"), J. Elias ("Elias"), R. Davis ("Davis"), R. Cobb ("Cobb"), Ives, C. Hamilton ("Hamilton"), D. Strayhorn ("Strayhorn"), L. Romero ("Romero"), D. Fuston ("Fuston"), T. Goff ("Goff"), Reed ("Reid"), T. Hernandez ("Hernandez"), Daniel Paramo ("Paramo"), CDCR Dental, and Pickett. (Case No. 12-cv-2642 WQH (WVG), ECF. No. 1). On May 30, 2013, Defendants a Motion to Dismiss and for Severance of Parties and Claims. (Case No. 12-cv-2642 WQH (WVG), ECF. No. 36). On October 15, 2013, this Court issued an Order stating that:

> Based on the foregoing, the Court hereby:
>
> 1) DENIES Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to FED.R.CIV.P.8 and S.D. CIVLR 8.2;
>
> 2) DENIES Defendants' Motion to Sever Claims pursuant to FED.R.CIV.P. 18 and 20;
>
> 3) DISMISSES Defendants Dental Dept and CDCR Dental Department, without prejudice pursuant to FED.R.CIV.P. 41(a)(2);
>
> 4) Sua sponte DISMISSES all claims against Defendants Davis and Picket for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) & § 1915A;
>
> 5) Issues an ORDER TO SHOW CAUSE no later than thirty (30) days from the date this Order is filed why the claims against Defendant Hamilton should not be dismissed for want of prosecution pursuant to FED.R.CIV.P. 4(m). If Plaintiff fails to provide the Court with documentation demonstrating proper service on Defendant Hamilton within thirty (30) days from the date this Order is filed, the claims against Defendant Hamilton in this action will be dismissed without prejudice.

(Case No. 12-cv-2642 WQH (WVG), ECF. No. 47).

On November 6, 2013, Plaintiff filed a non-opposition to the Court's OSC. (Case No. 12-cv-2642 WQH (WVG), ECF. No. 53). On November 8, 2013, the Court dismissed Defendant Hamilton from the First Action. (Case No. 12-cv-2642 WQH (WVG), ECF. No. 55).

On November 22, 2013, Defendants Elias, Cedano, Cobb, Davis, Foston, Goff, Hernandez, Ives, Owens, Paramo, Romero, Rucker, Solis, Strayhorn, and Taylor filed a Motion to Dismiss Plaintiff's Compliant pursuant to Federal Rule of Civil Procedure 12(b) for failure to exhaust administrative remedies. (Case No. 12-cv-2642 WQH (WVG), ECF. No. 61). On November, 26, 2013, Defendant Reid filed a Motion to Dismiss Plaintiff's Compliant pursuant to Federal Rule of Civil Procedure 12(b) for failure to exhaust administrative remedies. On February 26, 2014, this Court issued an Order granting both Defendants' Motions to Dismiss Plaintiff's Complaint without prejudice for failure to exhaust his administrative remedies. (Case No. 12-cv-2642 WQH (WVG), ECF. No. 89).

On March 14, 2014, Plaintiff filed a notice of appeal of the District Court's ruling before the Ninth Circuit. (Case No. 12-cv-2642 WQH (WVG), ECF. No. 91).

On April 11, 2014, Plaintiff, a prisoner of the State of California proceeding pro se and in forma pauperis, commenced the present action by filing a Civil Rights Complaint pursuant to Section 1983 against Defendants Taylor, Rucker, Owens, Solis, Cedano, Elias, Davis, Cobb, Ives, and Jannush. On August 14, 2014, all Defendants filed a Motion to Dismiss the Complaint as Duplicative of an Existing Action. (ECF No. 13). On November 14, 2014, Plaintiff filed a response opposing Defendants' Motion to Dismiss the Complaint. (ECF No. 30). Defendants have not filed a reply.

## II. Allegations of Complaint Case No. 12-cv-2642

In 2011, Plaintiff was housed at the Richard J. Donovan Correctional Facility ("RJD"). (Case No. 12-cv-2642 WQH (WVG), ECF. No. 1 at 9). On December 31, 2011, Plaintiff alleges that he was "slam[ed] on the ground" by Defendant Rucker, with assistance by Defendant Owens and "dragged" across the dayroom floor. *Id*. Plaintiff alleges that after he was "forced" into a cell, Defendant Rucker "started beating up" Plaintiff by "punching" and "kicking" Plaintiff in the face while Defendant Owens watched. *Id*. Plaintiff alleges that Defendant Owens encouraged Defendant Rucker's behavior and began to participate by "kicking the Plaintiff several times." *Id*. at 12. Plaintiff alleges Defendants Rucker and Owens "threatened Plaintiff if he reported the beating he would regret it." *Id*. Defendants Rucker and Owens "closed the cell door" and allegedly failed to provide Plaintiff with medical treatment. *Id*.

Plaintiff alleges that he "cut his arm" approximately twenty minutes later so he could call for medical attention and report the incident. *Id*. Plaintiff was interviewed by Captain Stout and Lieutenant Salas regarding the incident at the RJD "crisis bed." *Id*. On January 9, 2012, while still housed in the "crisis bed," Plaintiff alleges that a "nurse and Defendant Cedano" verbally assaulted him. *Id*. at 13. Plaintiff alleges that Defendant Cedano entered his cell door and pushed Plaintiff "violently" that caused Plaintiff to fall to the floor and "hit his head on the wall made of concrete." *Id*. Plaintiff alleges that Defendant Cedano "jumped on Plaintiff," choked him and ultimately "covered up" the use of force by claiming that he pinned Plaintiff down to

give him a hormone shot. *Id*.

Three days later, Plaintiff reported the incident to his psychologist and psychiatrist, who in turn reported the incident to Captain Stout. *Id*. Captain Stout ordered that a video interview of Plaintiff be conducted by Lieutenant Franco. *Id*. On January 10, 2012, Plaintiff was released from the crisis bed and returned to "EOP Building." *Id*. Plaintiff alleges that the actions by Defendant Cedano were in retaliation for Plaintiff reporting the incident with Defendant Rucker. *Id*.

Plaintiff alleges that his attempts to file complaints and grievances relating to these actions were thwarted by the actions of Defendants Paramo, Hernandez, Cobb and Foston. *Id*. at 14. As a result, Plaintiff alleges that he was subjected to "more retaliation, harassment, sexual harassment and beatings." *Id*. Plaintiff further alleges that despite the knowledge of these Defendants regarding the allegations that Plaintiff was "sexually assaulted by CDCR staff, beaten by staff, receiving retaliation, that his property was being taken and he was not receiving his medical appliance," they chose "not to act." *Id*.

Plaintiff alleges that Defendant Taylor and Solis retaliated against him by denying his medical appliances and property while he was in Administrative Segregation ("Ad-Seg") for more than five months. *Id*. at 15. In addition, Plaintiff alleges Defendants Strayhorn and Romero called Plaintiff a "faggot" in front of other inmates, searched his cell and took his property in retaliation for Plaintiff filing reports against them with Captain Franco, Sergeant Strickland, Sergeant Ashberry, Sergeant E. Garcia and Captain Reed. *Id*. Plaintiff alleges that he continued to have his cell searched on a daily basis in retaliation for reporting Defendants. *Id*. at 16.

Plaintiff alleges that on April 17, 2012, Defendants Elias, Ives and Davis called Plaintiff, a transgender inmate, a "man with a dick and tits" and a "queer." *Id*. Plaintiff alleges that Defendants Elias and Davis then went to search Plaintiff's cell and confiscate his property, including his legal work. *Id*. at 16-17. Plaintiff alleges that Defendant Davis read a personal letter belonging to Plaintiff to staff and inmates, then

proceeded to call him a "faggot" while Defendant Ives confiscated Plaintiff's deodorant and told him "now [Plaintiff] could smell like a flaming queer." *Id*. at 17.

When Plaintiff requested the return of his property, he was told by Defendant Elias to "prove it" and "you could 602 bitch." *Id*. Plaintiff alleges that Defendant Davis then told Plaintiff "I'm going to get you killed Murillo." *Id*. Plaintiff filed a staff complaint against Defendant Elias on April 5, 2012 and was assisting other inmates in filing grievances against Defendants Ives and Elias, which he alleges resulted in further retaliation by Defendants Elias, Davis and Ives. *Id*. Plaintiff alleges that Defendants Elias, Davis and Ives threatened Plaintiff that if he "continued to file staff complaints and help others, he would be sorry." *Id*.

Plaintiff alleges that on July 26 and 27, 2011, Defendant Pickett and Davis violated his Eighth Amendment rights when they "forced Plaintiff to take an x-ray and exposing him to radiation without protection." *Id*. at 18. Plaintiff alleges that they subjected him to "unwanted, unauthorized and offensive touching" when he was "pinned down" on the x-ray table. *Id*.

Plaintiff alleges that Defendant Hamilton also called Plaintiff a "faggot" in front of other inmates and threatened to "stick the baton into Plaintiff." *Id*. at 19. Plaintiff further alleges that Defendant Hamilton informed other inmates of Plaintiff's criminal history in an attempt to have other inmates "beat up" Plaintiff. *Id*. Plaintiff alleges that Defendant Hamilton told Plaintiff to "stay away" and "stop flirting" with inmate Rodriguez because this inmate "belonged" to Defendant Hamilton. *Id*. Plaintiff reported these threats to Defendant Goff, Sergeant Ashberry, Sergeant Strickland and Defendant Reed. *Id*. at 20. Plaintiff alleges Defendant Goff and Reed "failed to protect Plaintiff from the reported sexual harassment and from sexual misconduct from staff." *Id*. Plaintiff alleges that Defendant Goff failed to investigate the issue and Defendants Reed and Goff threatened to put Plaintiff in Ad-Seg if he "continued to report the conduct" as retaliation. *Id*. at 21.

Plaintiff's Complaint requests (1) an injunction preventing Defendants from

1  "further retaliation or placement in Ad-Seg without direct order from the chief warden,"
2  (2) damages in the sum of $500,000.00, (3) punitive damages in the sum of
3  $800,000.00, and (4) other "nominal compensation, pain and suffering, emotional pain,
4  physical pain, court costs, costs incurred, [and] attorney[s] fees." *Id*. at 7.

### III. Allegations of Complaint in the Present Action

In 2011, Plaintiff was housed at the Richard J. Donovan Correctional Facility ("RJD"). (ECF No. 1 at 6. Plaintiff alleges that on December 31, 2011 he was slammed on the ground by Defendant Rucker, with assistance by Defendant Owens, and dragged across the dayroom floor. *Id*. Plaintiff alleges that after he was forced into a cell, Defendant Rucker started beating Plaintiff by punching and kicking Plaintiff in the face while Defendant Owens kept watch for Defendant Rucker. *Id*. Plaintiff alleges that Defendant Owens encouraged Defendant Rucker's behavior and began to participate by also kicking Plaintiff. *Id*. at 7. Plaintiff alleges that Defendants Rucker and Owens threatened Plaintiff not to report the incident or he would regret it. *Id*. Plaintiff alleges that Defendants Rucker and Owens used excessive force against him as a form of retaliation for Plaintiff filing staff complaints against other officers within RJD. *Id*. at 6. Plaintiff alleges that Defendant Rucker then failed to provide Plaintiff with medical treatment. *Id*.

Plaintiff alleges that after reporting the beating by Defendants Rucker and Owens, he was housed in the RJD "crisis bed." *Id*. at 9. Plaintiff alleges that on January 9, 2012, while still housed in the "crisis bed," Defendant Cedano verbally assaulted him. *Id*. at 9. Plaintiff alleges that Defendant Cedano entered his cell door and pushed Plaintiff violently, which caused Plaintiff to fall to the floor and hit his head on the concrete wall. *Id*. Plaintiff alleges that Defendant Cedano jumped on Plaintiff, choked him, and covered up the use of force by claiming that he pinned Plaintiff down to give him a hormone shot. *Id*. Plaintiff alleges that the actions by Defendant Cedano were in retaliation for Plaintiff reporting the incident with Defendant Rucker. *Id*.

Plaintiff alleges that his attempts to file complaints and grievances relating to

these actions were thwarted by the actions of Defendant Cobb. *Id*. at 13. Plaintiff alleges that as a result, he was subjected to more harm, retaliation, sexual harassment, and beatings. *Id*. Plaintiff further alleges that Defendant Cobb had a duty to process staff complaints, especially dealing with claims of sexual harassment and excessive force, but he breached that duty. *Id*. at 15. Plaintiff alleges that Defendants Taylor and Solis retaliated against him by denying his medical appliances and property. *Id*.

Plaintiff alleges that on April 7, 2012, Defendants Elias, Ives, and Davis called Plaintiff, a transgender inmate, "a man with tits" and a "queer." *Id*. at 10-12. Plaintiff alleges that Defendants Elias and Davis then went to search Plaintiff's cell and confiscate his property, including his legal work. *Id*. at 10, 12. Plaintiff alleges that Defendant Davis read a personal letter belonging to Plaintiff to other inmates. *Id*. at 12. Plaintiff alleges that this was done in retaliation for Plaintiff assisting other inmates in filing grievances against Defendants Ives, Davis, and Elias. *Id*.

Plaintiff's Complaint requests (1) damages in the sum of $800,000.00, (2) punitive damages in the sum of $800,000.00, and (3) other "nominal compensation, pain and suffering, emotional pain and physical pain, [and] costs incurred." *Id*. at 18.

**IV.   Report and Recommendation**

The Magistrate Judge issued the Report and Recommendation Granting Defendants' Motion to Dismiss Plaintiff's Complaint with Prejudice. (ECF No. 32). The Magistrate Judge stated that "this Court must make a two-part determination. First, it must ascertain to what extent, if any, the First and Present Actions arise from the same concatenation of critical facts. Next, the Court weighs to what extent the parties are the same or in privity." (ECF No. 32 at 15) (internal citations omitted).

The Magistrate Judge found that:

> Here, it is clear the First and Present Actions share such a common transactional nucleus. The same purported misdeeds–retaliation during Plaintiff's time at RJD; use of excessive force on December 31, 2011; a subsequent utilization of too much force on January 9, 2012; one more round of retaliation perpetrated while Plaintiff was at the RJD on April 7, 2012; more retaliation and a related failure to properly file Plaintiff's grievance; and the causes of action for negligence and intentional infliction of emotional distress, specifically based on the previous

allegations of retaliation and excessive force–underlie both actions. Additionally, it is certain that the Ninth Circuit's decision regarding this Court's dismissal of the First Complaint will affect the extent to which Defendants will be liable–and Plaintiff's rights have been violated, and his request for redress timely made–for the very same actions that form the essential bedrock of the Present Action. If the Ninth Circuit determines Plaintiff's First Complaint is time-barred, nearly every general action, from Defendants' allegedly retaliatory acts to their use of excessive force to the emotional toll attributable to this conduct, detailed in the Present Complaint will just as surely be rendered unviable, and this action will need to be promptly dismissed. In other words, any "rights established by the judgment in the first action [by the Ninth Circuit] would be destroyed or impaired by a judgment in the present action," *Adams*, 487 F.3d at 691; conversely, a negative decision in the former will itself destroy any chance for judgment in the present matter. Furthermore, as the papers make plain, Plaintiff seeks the same relief in both complaints–an injunction; "nominal damages, pain & suffering, emotional pain, physical pain, court cost, cost incurred, attorney fees"; punitive damages in the amount of $800,000; and compensatory damages. (Compare Present Complaint at 18, with First Complaint at 7.) True, his request for damages has grown by $300,000, but the same type of relief, at nearly the same financial quantity, is sought. Still, a more crucially, as a brief perusal reveals, "the facts essential to the second suit were present in the [Plaintiff's] first suit." *McCoy v. Blossom*, No. 09-cv-2146, 2014 U.S. Dist. LEXIS 37605, at \*14, 2014 WL 1120346, at \*5 (W.D. La. Feb. 27, 2014). With the same general relief sought and the same general transaction pled, this Court finds a sufficient factual commonality, the first prong set forth in the Adams duplication test.

*Id*. at 16-17.

The Magistrate Judge further found that:

Here, though Jannush is named anew, this party has an interest concurrent with that of his colleagues and his employer, CDCR, all defendants against which Plaintiff moved in the First Action. Quite surely, the interest of the Present Action's one new defendant were and are being "adequately represented by those in the first suit"; quite surely, the substance of this defendant's rejoinder has been and will be made by his or her employer, the very agency "vested with the authority of representation" by statutory command. *Digennaro v. Whitehair*, 467 F. App'x 42, 44 (2d Cir. 2012) (quoting Barclay, 131 F. App'x at 779 (internal quotation marks omitted)). Furthermore–and significantly–the same tactical choices made by Defendants in the first suit will ultimately rebound to the benefit or the detriment of Jannush. If his colleagues are found exempt from liability, regardless of the basis he (or she) too will find himself (or herself) freed from further litigation implicating this same series of incidents. In short, a sufficient alignment between new and old herein appears, and an ineluctable privity of concern and advantage can be discerned from both the pleadings and the motions submitted in this proceeding. *McCarroll v. U.S. Fed. Bureau of Prisons*, No. 3:11-CV-934 (VLB), 2012 U.S. Dist. LEXIS 128394, at \*25–27, 2012 WL 3940346, at \*8 (D. Conn. Sept. 10, 2012) (collecting cases so concluding); accord *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 U.S. Dist. LEXIS 112494, at \*35, 2014 WL 4054284, at \*11 (S.D.N.Y. Aug. 15, 2014) (holding that a new defendant was in sufficient privity with "her employer and co-workers" so as to

> justify preclusion as well as citing to other cases in the same vein). Accordingly, based on this ever-accreting plethora of case law, this Court finds the second factor in Adams essential for deeming the Present Action duplicative of Plaintiff's first iteration has been shown by the bare record alone, with no more evidence needed for this conclusion to be drawn.

*Id*. at 18-19. The Report and Recommendation concludes that "[f]or the aforementioned reasons, the Court RECOMMENDS the MTD be GRANTED with prejudice." *Id*. at 20.

On May 11, 2015, Plaintiff filed an objection to the Report and Recommendation. (ECF No. 38).

**V.  Discussion**

The duties of the district court in connection with a report and recommendation of a Magistrate Judge are set forth in Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1). When a party objects to a report and recommendation, "[a] judge of the [district] court shall make a de novo determination of those portions of the [Report and Recommendation] to which objection is made." 28 U.S.C. § 636(b)(1).

**Plaintiff's Objection to Report and Recommendation**

Plaintiff contends that "none of the claims in the first action or on appeal are time-barred." *Id*. at 4. Plaintiff contends that the "current named Defendants are not named on the pending appeal before the Ninth Circuit, therefore - such Ninth Circuit should not effect the process or outcome of this current action." *Id*. at 5.

**Whether the Present Action is Duplicative of the First Action**

To ascertain whether the Present Action is sufficiently duplicative of the First Complaint, this Court must make a two-part determination. *See, e.g., Risinger v. SOC LLC*, 936 F. Supp. 2d 1235, 1245 (D. Nev. 2013) (noting that "two suits are duplicative where 'the causes of action and relief sought, as well as the parties or privies to the action, are the same' (citing Adams, 487 F.3d at 689)); *Goggia v. Fed. Nat'l Mortg. Ass'n*, No. Civ. S-12-3091 LKK/KJN, 2013 U.S. Dist. LEXIS 44202, at *14, 2013 WL 1279179, at *5 (E.D. Cal. Mar. 27, 2013). First, it must ascertain to what extent, if any, the First and Present Actions arise from the same concatenation of critical facts. *See*

1   *Laube v. FURminator, Inc.*, 765 F. Supp. 2d 1206, 1207 (C.D. Cal. 2012) (finding that
2   two actions "share a common transactional nucleus of facts" as both claims sought the
3   same relief and disputed ownership of the same patents).  Next, the Court weighs to
4   what extent the parties are the same or in privity.  *Adams*, 487 F.3d at 689.  If the same
5   cause of action and the same interests typify the two actions, dismissal on the basis of
6   an action's duplication is merited, whether the reason be deemed a complaint's frivolity
7   or its maliciousness, even though pro se filing are to be liberally construed.  *See Patel*
8   *v. Prince*, 276 F. App'x 531, 532 (8th Cir. 2008).

9   **Common Nucleus**

10   In *Adams*, the Ninth Circuit identified the four relevant criteria: "(1) whether
11   rights or interests established in the prior judgment would be destroyed or impaired by
12   prosecution of the second action; (2) whether substantially the same evidence is
13   presented in the two actions; (3) whether the two suits involve infringement of the same
14   right; and (4) whether the two suits arise out of the same transactional nucleus of facts."
15   *Adams*, 487 F.3d at 689 (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199,
16   1201–02 (9th Cir. 1982)).  A test adopted in the claim preclusion context, "[w]hether
17   two events are part of the same transaction or series depends on whether they are related
18   to the same set of facts and whether they could conveniently be tried together."  *W. Sys.*
19   *Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992) (citing RESTATEMENT (SECOND)
20   OF JUDGMENTS § 24(1) (1982)).  The possibility that different evidence may be
21   presented in the second action does not by itself foreclose a finding of a shared factual
22   core.  *Int'l Union of Operating Eng'rs-Emp'rs Constr. Indus. Pension v. Karr*, 994 F.2d
23   1426, 1430 (9th Cir. 1993).  A finding of every potential element listed in *Costantini*
24   is hence not required so long as "two claims arose out of the same transaction."  *Id.*;
25   *accord, e.g., Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000) (citing
26   *Costantini*, 681 F.2d at 1201–02); *C.D. Anderson & Co., Inc. v. Lemos*, 832 F.2d 1097,
27   1100 (9th Cir. 1987) (placing within a common nucleus any and all allegations that
28   arose from a singular act of securities trading).  In making this determination, a court

1 must be mindful of an old admonition: "[an] [a]ppellant is not permitted . . . to litigate
2 piecemeal the issues which could have been resolved in one action." *Flynn v. State Bd.*
3 *of Chiropractic Examiners*, 418 F.2d 668, 668 (9th Cir. 1969) (per curiam); *see also*
4 *Scoggin v. Schrunk*, 522 F.2d 436, 437 (9th Cir. 1975) (noting that this rule "is made
5 to apply to federal claims under 42 U.S.C. § 1983").

6 The Magistrate Judge correctly applied the applicable standard and correctly
7 found a "sufficient factual commonality" to satisfy the first prong of the *Adams*
8 duplication test because the present action seeks the same general relief and pleads the
9 same general transaction as the first action. (ECF No. 32 at 17).

10 **Same Parties and Privities**

11 If the same cause of action and the same interests typify the two actions,
12 dismissal on the basis of an action's duplication is merited, whether the reason be
13 deemed a complaint's frivolity or its maliciousness, even though pro se filing are to be
14 liberally construed. *See Patel v. Prince*, 276 F. App'x 531, 532 (8th Cir. 2008). So long
15 as even the new parties "represent the same interests," a sufficient similarity exists. *The*
16 *Haytian Republic*, 154 U.S. 118, 124, 14 S. Ct. 992, 993, 38 L. Ed. 930 (1894), cited
17 in *Adams*, 497 F.3d at 689; *see also, e.g., Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th
18 Cir. 2012) (discussing "the general principle regarding claim-spitting" still embodied
19 by *The Haytian Republic*). Reflecting this second factor's close, even derivative,
20 connection to the doctrine of virtual representation, a court looks for "adequate
21 representation" and such features as "a close relationship, substantial participation, and
22 tactical maneuvering." *Adams*, 487 F.3d at 691, cited in, *e.g., Thomas v. Almager*, No.
23 1:07-cv-01132-OWW-TAG HC, 2008 U.S. Dist. LEXIS 63240, at *3, 2008 WL
24 2858361, at *1 (E.D. Cal. July 24, 2008) (quoting id.); *Garza v. Warden*, No.
25 1:07-cv-01067-LJO-TAG HC, 2008 U.S. Dist. LEXIS 4065, at *3, 2008 WL 203564,
26 at *2 (E.D. Cal. Jan. 18, 20008) (same).

27 The Magistrate Judge correctly applied the applicable standard and correctly
28 found that "the second factor in Adams essential for deeming the Present Action

duplicative of Plaintiff's first iteration has been shown by the bare record alone, with no more evidence needed for this conclusion to be drawn." (ECF No. 32 at 19).

## VI. Conclusion

IT IS HEREBY ORDERED that the Report and Recommendation (ECF No. 32) is ADOPTED in its entirety. Defendants' Motion to Dismiss the Complaint as Duplicative of an Existing Action (ECF No. 13) is GRANTED with prejudice.

DATED: July 22, 2015

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge